IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HO KEUNG TSE                                         :
    Plaintiff,                                   :
                                                 :
    v.                                           :      CIVIL NO.  L-05-2149
                                                 :
APPLE COMPUTER, INC., et al.                         :
    Defendants,                                  :

## MEMORANDUM

This is a patent infringement action filed by Ho Keung Tse ("Tse") against five technology companies based on the West Coast (collectively "Defendants").  Now pending is Defendants' joint motion to transfer venue to the Northern District of California.  The issues have been fully briefed by the parties, and no oral argument is necessary.  See Local Rule 105.6 (D. Md. 2004).  For the reasons stated herein, the Court will, by separate Order, GRANT Defendants' motion.

## I.        Background

Plaintiff Tse, who resides in Hong Kong, alleges that he is the owner of a United States patent titled "Protection of Software Again [sic] Against Unauthorized Use."  Simply stated, Tse's invention is a software program that reduces the unauthorized distribution of digital music and video files.  The program is a form of Digital Rights Management ("DRM"), a technology used to control unauthorized access to digital data.

Defendants are five West Coast corporations that sell digital music and videos to the public through the Internet.  Tse alleges that each Defendant is infringing upon his patent in violation of federal law.  Specifically, he claims that each Defendant is using his program in its DRM scheme in order to protect its digital files from unauthorized distribution.  Defendants have

no particular connection to Maryland, other than the fact that they sell their digital files and related products to Maryland residents:

(i)  Defendant Apple Computer, Inc. ("Apple") sells digital files through its on-line iTunes Store.  Apple is a California corporation that is headquartered in Northern California. The iTunes software and related products were primarily developed in Northern California, its center of operations.  With the exception of one DRM engineer in Colorado, all of the iTunes engineers who work on Apple's DRM scheme are located in California.  Although a single iTunes engineer resides in Maryland, his work does not concern DRM.  The majority of documents relating to the development of iTunes are in Northern California, as are the corporate officers likely to be called as witnesses in the case.  Apple has no corporate facilities in Maryland.  (See Docket No. 40, Declaration of Judy Goodson.)

(ii)  RealNetworks, Inc. ("RealNetworks") is a Washington corporation that sells digital files through its on-line RealPlayer Music Store.  RealNetworks's headquarters are in Seattle, Washington.

(iii)  MusicMatch, Inc. ("MusicMatch") is a wholly owned subsidiary of Yahoo! Inc., a Delaware corporation with headquarters in California.  As part of Yahoo! Music, MusicMatch sells digital files through its on-line MusicMatch Music Store.  All of MusicMatch's operations are in California, with the exception of a small engineering team in Florida and a single business development employee in Texas.  MusicMatch's software was designed and maintained by employees in California and Florida, and witnesses and documents relevant to the technical details of MusicMatch's software and MusicMatch's marketing of the software are located in California.  (See Docket No. 6, Declaration of James Pitaro.)

(iv)    Sony Connect, Inc. ("Sony") is a Delaware corporation that is headquartered in

Los Angeles.  It sells digital files through its on-line Sony Connect Music Store.  Sony does not

have a corporate office in Maryland, and its Sony Connect Music Store and related products

were not developed in Maryland.  Sony claims that its employee-witnesses and documents that

are likely relevant to the case are in California.  (See Docket No. 6, Declaration of James B.

Pickell.)

(v)    Napster, Inc. ("Napster") is a California corporation that sells music through its on-

line Napster Music Store.  Napster's primary operations and over 92% of its employees are

located in its California offices, which house Napster's headquarters and operations and its

technology and marketing departments.  Napster's products that Tse claims infringe on his patent

were developed in California.  All of Napster's corporate officers and technology personnel who

would likely be called as witnesses in this case are in California, as are the documents that are

likely relevant to this litigation (e.g., source code, technical specifications, schematics, and

technical operations documentation).  Napster has no offices, documents, or employees in

Maryland.  (See Docket No. 6, Declaration of Nand Gangwani.)

Although this case has no particular connection to Maryland, Tse filed suit in this Court

because his attorney resides in Maryland.  Defendants[1] moved to transfer venue to the Northern

District of California under 28 U.S.C. § 1404(a).[2]

---

[1]  Only four of the five Defendants join the motion.  The fifth Defendant, RealNetworks, had not yet been served when the motion was filed.  Although RealNetworks has since been served and filed an Answer to the Complaint, RealNetworks has not stated a position regarding the transfer motion.

[2]  Tse alleges in his Complaint that venue is proper in Maryland because Defendants do substantial business in Maryland and have sold infringing products in the state.  Defendants do

II.     **Analysis**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3]  The moving party bears the burden, by a preponderance of the evidence, to show that transfer to another forum is proper.  Helsel v. Tishman Realty & Constr. Co., 198 F. Supp. 2d 710, 711 (D. Md. 2002). The decision whether to transfer is committed to the sound discretion of the district court.  Cronos Containers, Ltd. v. Amazon Lines, Ltd., 121 F. Supp. 2d 461, 465 (D. Md. 2000).

The Court may consider a number of factors in deciding whether to transfer venue.  The principal factors include "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice."  Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002).[4]  "Perhaps the most important factor . . . is the convenience of the witnesses."  Cronos, 121 F. Supp. 2d at 466.  The Court will address each factor in turn.

A.      **Plaintiff's Choice of Venue**

Ordinarily, a plaintiff's choice of forum is entitled to substantial weight.  See Lynch, 237

---

not claim that venue is improper; rather, they ask the Court to transfer venue for the convenience of the witnesses and parties and in the interest of justice.

[3]  The parties do not dispute that Tse could have filed this action in the Northern District of California.

[4]  Other factors to consider are "the relative ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'"  See Cronos Containers, Ltd. v. Amazon Lines, Ltd., 121 F. Supp. 2d 461, 465 (D. Md. 2000) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

F. Supp. 2d at 617.  That weight is lessened, however, when either (i) the chosen forum is not the

plaintiff's home,[5] or (ii) the chosen forum has little or no connection to the events giving rise to

the litigation.[6]   Both circumstances are present in this case.  First, Tse is a Hong Kong resident

and has no connection to Maryland other than the fact that his attorney resides here.  Maryland,

therefore, is not Tse's home forum.

Second, the vast majority of the events giving rise to this litigation occurred in California,

not Maryland.  "In patent infringement actions, 'as a general rule, the preferred forum is that

which is the center of gravity of the accused activity.'"  Ricoh Co., Ltd. v. Honeywell, Inc., 817

F. Supp. 473, 481 n.17 (D.N.J. 1993) (quoting S.C. Johnson & Sons, Inc. v. Gillette Co., 571 F.

Supp. 1185, 1188 (N.D. Ill. 1983)) (emphasis in original).  "In finding that 'center of gravity,' a

------

[5]  See Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 480, 483 (D.N.J. 1993)
(stating that "it is . . . well-established that a plaintiff's choice of forum is afforded less deference
when the plaintiff has chosen a foreign forum" and holding that the court's lessened deference to
plaintiff's choice of forum was bolstered by the fact that the plaintiff is a foreign corporation
suing in a foreign forum); Cressman v. United Air Lines, 158 F. Supp. 404, 407 (S.D.N.Y. 1958)
("[W]here the plaintiff brings suit in a jurisdiction which is neither his home forum, nor has any
connection whatever with the matter in controversy, that choice is to be accorded less weight
than would ordinarily be the case.").

[6]  Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002) ("Although a
plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is
significantly lessened when none of the conduct complained of occurred in the forum selected by
the plaintiff and said forum has no connection with the matter in controversy."); LG Elecs. Inc.
v. Advance Creative Computer Corp., 131 F. Supp. 2d 804, 814 (E.D. Va. 2001) ("When a
plaintiff chooses a foreign forum, and the cause of action bears little or no relation to that forum,
the plaintiff's chosen venue is not entitled to substantial weight."); Dicken v. United States, 862
F. Supp. 91, 92-93 (D. Md. 1994) ("[T]he plaintiff's choice of forum is given little weight when
none of the conduct complained of occurred in the forum selected by the plaintiff and said forum
has no connection with the matter in controversy." (quoting Mims v. Proctor & Gamble Distrib.
Co., 257 F. Supp. 648, 657 (D.S.C. 1966))); Ricoh, 817 F. Supp at 481 ("When the central facts
of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less
deference.").

district court 'ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its <u>production</u>.'" <u>Id.</u> (quoting <u>S.C. Johnson</u>, 571 F. Supp. at 1188) (emphasis in original).[7]  The software and products alleged to violate Tse's patent were designed and produced in California, with the exception of MusicMatch's software, which was partially designed in Florida.[8]  None of the design or production occurred in Maryland.   California, then, is the "hub of activity" in this case.

The only connection that this case has to Maryland is the fact that Defendants sell their products and digital files to Maryland residents.  As Tse recognizes, however, Defendants sell their products and files all over the nation.  This case, therefore, has no more connection to Maryland than it does to the other forty-nine states.  <u>See</u> <u>Ricoh</u>, 817 F. Supp. at 486 n.26 ("[L]imited sales of an infringing product within a forum are not particularly significant in determining the locus of culpable conduct in a patent infringement case.").

For these reasons, the Court will give little weight to Tse's choice of forum.  <u>See</u> <u>Paratek Microwave, Inc. v. Agile Materials & Techs., Inc.</u>, 2005 WL 1367087, at *2 (D. Md. June 7, 2005) ( "[A] critical portion of the allegedly infringing activities necessarily occurred in California where Defendant manufactures the products at issue.  Considering these facts, the Court therefore gives some deference to Plaintiff's forum choice but does not afford it the paramount consideration it requests.").

---

[7]  <u>See</u> <u>also</u> <u>LG Elecs. Inc.</u>, 131 F. Supp. 2d at 814.

[8]  Because RealNetworks did not join the motion, there is no evidence regarding where its software and related products were designed.  Regardless, the Court notes that RealNetworks's headquarters are in Seattle, Washington, which is significantly closer to California than to Maryland.

B.     **Witness Convenience**

1.     **Defendants' Witnesses**

Defendants have no witnesses in Maryland.  Rather, their witnesses (corporate officers and technical engineers) are located in California.[9]  Accordingly, Defendants argue that it will be more convenient for their witnesses if this case is transferred to California.

Tse responds that Defendants must do more than simply state that their witnesses are located in California.  Rather, Defendants must identify their key witnesses and describe their anticipated testimony, he contends.  Tse is correct that, typically, a defendant seeking transfer must provide detailed information about its witnesses and the nature of their testimony.  <u>See</u> <u>id.</u> (stating that defendant must identify its key witnesses); <u>Koh v. Microtek Int'l, Inc.</u>, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) ("The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.").

This information is necessary to permit a court to determine how much weight to give a witness's claim of inconvenience:  "Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight.  By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue."  <u>Koh</u>, 250 F. Supp. 2d at 636 (quoting <u>Board of Trustees v. Baylor Heating &</u>

---

[9]  Defendants also claim that because California is home to the computer industry, many of the non-party witnesses are likely to be found there.  No weight can be assigned to this argument because Defendants have not identified by name and address any non-party witnesses who will be called on to give evidence in this case.

Air Conditioning, Inc., 702 F. Supp. 1253, 1258 (E.D. Va. 1988)).

This is not a case, however, where witnesses are located in both Maryland and California and the Court must determine whether the handful from California are critical to the case. Rather, there are no employees in Maryland, and the vast majority of Defendants' employees who worked on the allegedly infringing products and software are in California, with the exception of a small number of MusicMatch employees in Florida and a single Apple employee in Colorado.[10] Thus, it is clear that most, if not all, of the key witnesses are in California. See id. at 636-37 ("[I]t is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material."). Although these witnesses will be deposed in California, they would be inconvenienced if the case were litigated in Maryland because they would be required to travel across the country to Maryland to testify at trial.

### 2.    Tse's Witnesses

Tse does not claim that he or Defendants have any fact witnesses in Maryland. Rather, he states that he intends to introduce experts who are located within 100 miles of the federal courthouse in Baltimore. Although Tse fails to mention it, 100 miles is significant for purposes of the subpoena rule. Under Rule 45(b)(2) of the Federal Rules of Civil Procedure, "a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the . . . trial." Fed. R. Civ. P.

---

[10] As previously mentioned, RealNetworks did not join Defendants' motion and the Court lacks information about its operations and the location of its employees. However, its headquarters are in Seattle, Washington, which is much closer to California than to Maryland.

45(b)(2).  The Court interprets Tse's mention of the fact that his experts are located within 100 miles of Baltimore as signifying that if the case remains in Baltimore, he may exercise subpoena power over them, but if the Court transfers the case to California, he will lose that subpoena power.  The Court rejects Tse's argument.

First, if Tse is hiring these experts to testify on his behalf, he will not need to subpoena them.  Rather, their contract with Tse, and the fees that he will pay them, will induce them to appear at trial.  Thus, even if the case is transferred to the Northern District of California, where these experts will be beyond the subpoena power of that court, they will still appear to testify. Second, although it would be more inconvenient for Tse's experts to testify in California as opposed to their home state, they will be compensated for their time.  Finally, the convenience of fact witnesses, whose involvement in the case is involuntary, must be preferred over that of hired experts, whose participation is voluntary.

### 3.   Conclusion

For these reasons, the Court concludes that this factor weighs in favor of transfer.  There are no fact witnesses in Maryland.  See Cronos, 121 F. Supp. 2d at 465 ("In this district, motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district.").  If this case remains in Maryland, virtually all of Defendants' witnesses will be required to travel to Maryland from the West Coast.  See id. at 466 (stating that "transfer clearly serves the convenience of defendant's witnesses because . . . [they] have no connection with Maryland").  If the case is transferred to California, Defendants' witnesses will be able to testify in their home state.  Although Tse's experts will need to travel to California for trial, they will be compensated.

C.      **Convenience of the Parties**

1.      **Tse**

Tse resides in Hong Kong, which is closer to the West Coast than it is to Maryland.  Tse want to keep this case in Maryland, however, because his attorney lives here.  Convenience of counsel, however, is not a factor for the Court to consider in ruling on a motion to transfer.  <u>See</u> <u>id.</u> at 466 n.4 ("It is of no consequence that the office of plaintiff's lead counsel is in Maryland. Section 1404(a) is concerned with the convenience of parties and witnesses and not with the convenience of counsel.").

Tse argues that if this case is transferred to California, he will need to hire local counsel at considerable additional expense.  He states that transfer to California will "effectively deprive [him] of choice of counsel" and "deprive [him] of access to the courts."  (Docket No. 16, at 3.) Tse, however, has offered no evidence that his financial situation is such that he could not afford local counsel.  <u>See</u> <u>Koh</u>, 250 F. Supp. 2d at 639 (stating that although the court does not doubt that transfer would increase the expense of litigation for the plaintiff, the plaintiff has not demonstrated financial hardship that would foreclose prosecution in California).  Rather, he asks the Court to assume that, although he has hired counsel and experts in the United States and is prepared to prosecute a complex patent case in this country, he is unable to afford the additional expense of hiring local counsel.  The Court cannot make this assumption.

Transfer to another district almost always requires a party to obtain local counsel. Without detailed information about Tse's financial situation, the fact that he must hire local counsel does not weigh against transfer.  <u>See</u> <u>Cressman v. United Air Lines</u>, 158 F. Supp. 404, 407 (S.D.N.Y. 1958) ("It will almost always be the case that the granting of a transfer motion

will inconvenience counsel in the transferor district or necessitate the engagement of new

counsel.  Were this to be accorded much weight in motions of this type, Section 1404(a) would

be rendered virtually nugatory.").  Moreover, Tse states in his brief that all travel during

discovery will be by counsel, not the witnesses.  (Docket No. 16, at 13.)  Thus, Tse's counsel

will travel to California for the depositions of Defendants' witnesses, regardless of where the

case is litigated.  Local counsel, therefore, would play only a limited role in the case.

### 2.      Defendants

With the exception of MusicMatch, Defendants have not explained how they, as opposed

to their witnesses, would be inconvenienced by litigating this case in Maryland.  Only the

Director of Business Affairs for Yahoo! Music (of which MusicMatch is a part), has stated that

he will need to travel to Maryland for the trial and that his absence from work will disrupt

MusicMatch's operations.  (Docket No. 6, Declaration of James Pitaro.)  None of the other

Defendants have stated how their officers' or employees' absence from work will affect their

operations.  The Court cannot assume that simply because Defendants are based on the West

Coast that they will be inconvenienced by trying the case in Maryland.  Defendants are large,

national corporations that do business across the nation.

Tse contends that three of the Defendants (Yahoo!/MusicMatch, Sony, and Napster) are

incorporated in Delaware[11] and that as a result, the East Coast is actually a convenient forum for

them.  The Court disagrees.  Delaware is a popular state for incorporation because of its

favorable business laws.  If the fact that a company is incorporated in Delaware means that it is

---

[11]  Tse is incorrect about Napster, which is actually incorporated in California.  (See Docket No. 6, Declaration of Nand Gangwani.)

convenient for that business to litigate in Delaware and the surrounding states, then the venue transfer statute would be rendered pointless for a large number of companies sued in Delaware and the other Mid-Atlantic states.  Accordingly, the Court refuses to hold that the state in which a company is incorporated, in and of itself, dictates which districts are convenient for litigation.

### 3.     Conclusion

The Court concludes that this factor is neutral.  Tse lives and works in China and, therefore, will incur a financial burden and travel a great distance, regardless of where in the United States this case is litigated.  He will suffer no more inconvenience if this case is tried in California, which is actually closer to his home.  Defendants, which do business across the nation, have failed to show that they will be inconvenienced by trying this case in Maryland.

### D.     Interest of Justice

The Court finds that the interest of justice weighs in favor of transfer.  California clearly has an interest in adjudicating this case because the vast majority of the alleged conduct occurred in that state.  Maryland's interest in the case is no greater than that of any other state.  Maryland jurors should not be burdened with adjudicating this case, which stems from conduct that occurred on the other side of the country.  Ricoh, 817 F. Supp. at 487.

## III.    Conclusion

The undersigned is reluctant to transfer to another judge a case that promises to involve considerable effort.  Nonetheless, the application of the venue transfer statute clearly cuts in favor of transferring the case to California, where the center of gravity lies.

Accordingly, the Court will, by separate Order, GRANT Defendants' motion and TRANSFER this case to the Northern District of California.

12

Dated this 31st day of August, 2006.


_____/s/_____
Benson Everett Legg
Chief Judge